UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT D. CHAMPION, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18CV2045 RLW |
| | ) |
| ANDREW M. SAUL, Commissioner | ) |
| of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the applications of Robert D. Champion, Jr. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (ECF No. 13), Defendant has filed a brief in support of the Answer (ECF No. 18), and Plaintiff has filed a Reply (ECF No. 19). For the reasons set forth below, the Court reverses the decision of the Commissioner and remands for further proceedings

### I. Procedural History

Plaintiff protectively filed his application for DIB under Title II of the Social Security Act on June 29, 2015. (Tr. 15, 111) He protectively filed an application for SSI under Title XVI

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

of the Act on November 23, 2015. (Tr. 15, 112, 189) Plaintiff claimed he became disabled on June 23, 2015 because of 6 bulging and herniated disks; pinched nerves; no blood flow to spine; spinal stenosis; arthritis in both knees; diabetes; high blood pressure; depression; and erectile dysfunction. (Tr. 91) Plaintiff was initially denied relief on March 8, 2016. (Tr. 111-17) At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on January 23, 2018. (Tr. 54-90, 122) By decision dated April 25, 2018, the ALJ found Plaintiff was not disabled. (Tr. 15-26) On October 19, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-3) Thus, the ALJ's decision stands as the final decision of the Commissioner.

## II. Relevant Evidence Before the ALJ

At the hearing before the ALJ, Plaintiff's attorney presented an opening statement. Counsel stated Plaintiff was 45 years old with a combination of physical and mental impairments including degenerative disc disease in the cervical spine, degenerative disc disease in the lumbar spine, arthritis in both knees, and depression. Plaintiff's arthritis was worse in his left knee, and the degenerative disc disease of the spine caused pain and numbness in his arms. Plaintiff spent a typical day alternating between sitting, standing, walking, and laying down to deal with his pain, which also affected his mental health. Plaintiff's limitations from physical pain and mental impairments precluded his past work as a satellite dish installer and temporary factory worker. In addition, Plaintiff was precluded from other work due to his need to frequently change positions, the affect of pain on his ability to concentrate and focus, and the number of absences from work. (Tr. 60-61)

Plaintiff testified he completed the seventh grade and did not take a GED test. He last worked as a factory worker, which included lifting 20 pounds and standing 30 minutes at a time.

Plaintiff stopped working because he could not grip items without dropping them. He also previously worked for Dish Network installing satellite dishes. The heaviest weight Plaintiff lifted was 100-120 pounds. In addition, Plaintiff's prior work included working an injection molding machine at a plastics company. (Tr. 61-67)

Plaintiff further testified he stopped working due to an inability to bend over and kneel. He took medication for the pain. On a good day, Plaintiff could clean his house and help his son with odd jobs. Plaintiff sat in a recliner about 60% of the day and used a pillow for lower back support. He also experienced neck pain and back pain, which caused arm pain and weakness in both arms. He was unable to grip things with his hands. However, Plaintiff had not experienced atrophy in his arm muscles. He wore slip on shoes because he was unable to bend over and tie shoelaces. Plaintiff further stated his doctor did not advise surgery but instead a nerve block was performed. The procedure provided some relief for a few months but then wore off. (Tr. 67-78)

On a typical day, Plaintiff could stand ten minutes and sit for 20 to 30 minutes. He would need to walk around for about 15 minutes to loosen his back but then sit down again due to knee pain. Plaintiff could recline in his recliner for about 30 minutes at a time. Plaintiff testified he had good and bad days, with more bad days. On a bad day, Plaintiff experienced pain in his head, neck, lower back, and left knee. He did not have insurance to obtain an MRI. Plaintiff also stated he had difficulty concentrating due to pain, and the medications caused fogginess and nausea. (Tr. 78-81)

A vocational expert ("VE") also testified at the hearing. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and history who is capable of working at the light exertional level. Other limitations included never climbing ladders, ropes or scaffolds; never being exposed to unprotected heights or hazardous work environments;

occasionally climbing stairs or ramps; frequently balancing; occasionally stooping or crouching; and never kneeling or crawling. The individual could occasionally reach over head with either upper extremity and frequently engage in tasks that required fingering or handling. This person would need to sit for five minutes hourly while remaining on task and would need to avoid concentrated exposure to extreme cold and vibration. (Tr. 81-82)

In light of this hypothetical, the VE testified the individual could not perform any of Plaintiff's past work. However, he could work as a folding machine operator in the clerical industry; a garment sorter; and a lens matcher in the optical goods industry. If the ALJ changed the hypothetical from frequent handling and fingering to frequent handling and occasional fingering, these jobs would remain. In addition, if the person could only stand four hours rather than six hours a day and sit ten minutes hourly while remaining on task, the VE's responses would be the same. If the individual needed to sit more than four hours a day, he would move to the sedentary job level. The VE gave three examples of sedentary jobs the individual could perform, including patcher in the household appliances industry, polisher of eyeglass frames, and table worker, all which required frequent handling/fingering. Dowel inspector in the woodworking industry, egg processor in the pharmaceuticals industry, and waxer in the glass products industry only required frequent handling and occasional fingering. However, only occasional handling/fingering or missing two or more days of work per month would eliminate all competitive work. (Tr. 82-86)

Plaintiff's attorney also asked the VE to assume an individual who needed to walk around for ten minutes hourly due to pain. The VE testified this would be too much time off task and would preclude work in the national economy at both the light and sedentary levels. The VE clarified that being off task 5% of the time would not preclude all jobs; however, being off task

4

10% of the time would be job preclusive. The VE further testified her responses were not inconsistent with the Dictionary of Occupational Titles ("DOT"). In addition, she stated areas not covered by the DOT such as a sit/stand option, absenteeism, walking/pacing, and time off-task were covered by her review of professional resources. (Tr. 86-88)

### III. Discussion

#### A. Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, Plaintiff must prove he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a).

Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his] ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish his impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *McCoy*, 648 F.3d at 611.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be

6

found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove he is disabled. *Brantley v. Colvin*, No. 4:10CV2184 HEA, 2013 WL 4007441, at *3 (E.D. Mo. Aug. 2, 2013) (citation omitted). At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

The Court must consider evidence which supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). The Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

## B. The ALJ's Decision

In the decision dated April 25, 2018, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. He had not engaged in substantial gainful employment since June 23, 2015, his alleged onset date. Further, Plaintiff's severe impairments included degenerative disc disease of the cervical, thoracic, and lumbar spine; arthritis of the bilateral knees; and obesity. However, he did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-20)

After carefully considering the entire record, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work except "he can stand for 4 hours of an 8-hour day; he can never climb ladders, ropes, or scaffolds or be exposed to unprotected heights or hazardous work environments; he can occasionally climb stairs or ramps; he can frequently balance; he can occasionally stoop or crouch but never kneel or crawl; he can occasionally reach overhead with either upper extremity; he can frequently handle; he can occasionally finger; he can sit 10 minutes hourly while remaining on task; and he must avoid concentrated exposure to extreme cold as well as vibration." (Tr. 20-21) The ALJ further found Plaintiff was unable to perform any past relevant work. However, in light of his younger age, limited education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. Such jobs as set forth by the VE included folding machine operator, garment sorter, lens matcher, dowel inspector, egg processor, and waxer of glass products. The ALJ determined the VE's testimony was consistent with the information contained in the DOT. Because Plaintiff was capable of making a successful adjustment to other work existing in

significant numbers in the national economy, the ALJ concluded Plaintiff had not been under a disability from June 23, 2015 through the date of the decision. (Tr. 21-26)

C. **Analysis of Issue Presented**

In his initial brief to this Court, Plaintiff argues the ALJ erred in relying on the VE opinion that included an apparent conflict with the DOT without identifying or resolving the conflict. Specifically, Plaintiff contends the ALJ found Plaintiff was limited to work that involved only occasional reaching overhead with either upper extremity, which limitation the ALJ included in the RFC and the hypothetical question. However, Plaintiff argues that the jobs identified by the VE require frequent reaching, without specifics as to direction, as described by the DOT. Plaintiff further states while the VE identified conflicts with the DOT, she did not address the conflict related to reaching. Thus, Plaintiff asserts the cited jobs may require overhead reaching more frequently than Plaintiff is permitted to perform such that remand is warranted.

Defendant responds that the job descriptions involve only occasional, if any, overhead reaching such that no conflict exists between the VE's testimony regarding the identified job titles and the DOT. Therefore, Defendant asserts the VE's testimony supports the ALJ's conclusion that Plaintiff could perform a significant number of jobs with a limitation to occasional overhead reaching.

The Court agrees with Plaintiff and finds that substantial evidence does not support the ALJ's determination. The Court notes the ALJ asked and the VE testified that the vocational testimony was consistent with the DOT. *See Jones v. Astrue*, 619 F.3d 963, 977-78 (8th Cir. 2010) (noting that the ALJ is required to ask whether there is a conflict between the VE evidence and information provided in the DOT). "However, the responsibilities of the ALJ do not end

9

there." *Moore v. Colvin*, 769 F.3d 987, 989 (8th Cir. 2014). In *Moore*, the Eighth Circuit Court of Appeals stated:

> If there is an "apparent unresolved conflict" between VE testimony and the DOT, the ALJ must "elicit a reasonable explanation for the conflict" and "resolve the conflict by determining if the explanation given [by the expert] provides a basis for relying on the [VE] testimony rather than on the DOT information." SSR 00–4p, 2000 WL 1898704, at *2–4 (Dec. 4, 2000). The ALJ is not absolved of this duty merely because the VE responds "yes" when asked if her testimony is consistent with the DOT.

*Moore*, 769 F.3d at 989-90. The *Moore* court also found an apparent unresolved conflict existed where the ALJ limited the plaintiff to occasional reaching bilaterally yet the DOT and SCO[2] listed the jobs recommended by the VE as requiring reaching. *Id.* at 989. The *Moore* court noted that neither the DTO nor the SCO specified the direction of reaching for those jobs. *Id.*; *see also Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) ("While the ALJ gave specific directions to the VE before he testified, the record does not reflect whether the VE or the ALJ even recognized the possible conflict between the hypothetical describing a claimant who could reach overhead only occasionally, and DOT job listing # 737.687–026 indicating that a check-weigher job involved constant reaching.").

Here, Defendant acknowledges that the jobs offered by the VE involve reaching. However, Defendant contends that these jobs require only occasional overhead reaching, which complies with the jobs cited by the VE. (Def.'s Brief p. 7, ECF No. 18) The Defendant offers no support for the proposition that no conflict exists because the identified jobs only involve occasional overhead reaching. As found by the Eighth Circuit in *Moore*, "[a] VE must offer an explanation for any inconsistencies between her testimony and the DOT, which the ALJ may

---

[2] The *Selected Characteristics of Occupations Defined* ("SCO") is a companion volume to the DOT.

10

accept as reasonable after evaluation." *Moore*, 769 F.3d at 990 (citation omitted). "Absent adequate rebuttal, however, VE testimony that conflicts with the DOT 'does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform.'" *Id.* (quoting *Kemp*, 743 F.3d at 632).

In this case, the ALJ limited Plaintiff to occasional reaching overhead with either upper extremity. (Tr. 21) According to the DOT, the light work positions of folding-machine operator (DOT 208.685-014), lens matcher (DOT 713.687-030), and garment sorter (DOT 222.687-014) require frequent reaching,[3] and the sedentary positions of dowel inspector (DOT 669.687-014), egg processor (DOT 559.687-034), and glass products waxer (DOT 779.689-038) also require frequent reaching.[4] As found by the *Moore* court, the DOT does not specify the direction of reaching. *Id.* at p 989. Thus, the positions identified by the VE may require reaching overhead, and the ALJ did not elicit testimony from the VE to resolve the apparent conflict between those positions, as defined by the DOT, and the Plaintiff's RFC as determined by the ALJ. *See Moore*, 769 F.3d at 990; *Kemp*, 743 F.3d at 633.

However, Defendant argues the VE did resolve any conflicts by affirming her testimony was not inconsistent with the DOT and explaining she relied on other sources in identifying jobs Plaintiff could perform. The Court notes the VE explicitly limited her conflict resolution to cover missed days, sitting periodically, being off task, and walking or pacing. (Tr. 88) The VE

---

[3] The Dictionary of Occupational Titles (4th ed. Rev. 1991), specifies the light work positions of folding-machine operator, 1991 WL 671754, lens matcher, 1991 WL 679274, and garment sorter, 1991 WL 672131, require reaching frequently, from 1/3 to 2/3 of the time.

[4] The DOT describes the sedentary positions of dowel inspector, 1991 WL 686074, egg processor, 1991 WL 683787, and glass products waxer, 1991 WL 680755, as requiring frequent reaching.

11

stated, "if I've indicted they've been as a result of my review of professional resources, then they are not inconsistent. It's merely because they are not addressed that I have gone to review of professional literature." (Tr. 88) Review of the VE's testimony indicates she only reviewed conflicts with regard to absenteeism (Tr. 86), being off-task (Tr. 86-87), pacing (Tr. 86-88), and sitting (Tr. 84). The VE did not discuss the conflicts between the job descriptions in the DOT, which require frequent reaching, and the ALJ's limitation of only occasional reaching overhead.

Defendant urges the Court to apply reason to "recognize the efforts of the ALJ to identify possible conflicts and the efforts of the VE to make clear that she relied on her knowledge and experience for issues not covered by the DOT" and to conclude no conflict exists. (ECF No. 18 p. 7) Defendant also asks the Court to find the jobs cited by the VE "reasonably do not require more than occasional overhead reaching." (*Id.*) However, the Eighth Circuit has stated, "[w]e do not believe that the generic character of the DOT's job descriptions can in and of itself resolve a discrepancy between a job's requirements as set forth in the DOT and a vocational expert's testimony that someone with a more limited RFC is qualified to do it." *Thomas v. Berryhill,* 881 F.3d 672, 677 (8th Cir. 2018) (citing SSR 00-4p). The *Thomas* court noted its "longstanding precedent that an ALJ may not rely on unexplained expert testimony that someone with a particular RFC is qualified to do a job that the DOT describes as exceeding it." *Id.* at 678 (citations omitted).

Because the ALJ failed to resolve the apparent conflict between the VE's testimony and the DOT, the Court finds the ALJ's decision "does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform." *Kemp,* 743 F.3d at 632. Therefore, the Court must reverse the decision and remand the case to the Commissioner for further proceedings to

determine at step five of the sequential evaluation process whether jobs exist in the national economy that Plaintiff is capable of performing. *Id.* at 633; *see also Thomas*, 881 F.3d at 678 (reversing and remanding the ALJ's decision because the ALJ failed to elicit testimony from the VE on whether a reasonable explanation existed for the conflict between the VE's testimony and the DOT, thus the VE's testimony did not constitute substantial evidence on which the Commissioner could rely to conclude plaintiff was not disabled due to the existence of jobs in the economy which plaintiff could perform).

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits be **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum and Order. An appropriate Order of Remand shall accompany this Memorandum and Order.

Dated this 5th day of March, 2020.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**